```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

SETH KNIGHT,                       §
                                   §
        Plaintiff,                 §
                                   §
v.                                 §     CIVIL ACTION NO. H-05-0319
                                   §
HOUSTON COMMUNITY COLLEGE,         §
ZACHARY HODGES, and                §
MAYA DURNOVO,                      §
                                   §
        Defendants.                §
```

MEMORANDUM AND ORDER

Pending is Defendants' Motion for Summary Judgment (Document No. 20). After having carefully reviewed the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted.

I. Background

Plaintiff Seth Knight ("Plaintiff") works as a horticulture professor for the Houston Community College System ("HCC"). He sues Defendants HCC, Northwest HCC President Zachary Hodges ("Hodges"), and Northwest HCC Dean of Workforce Development Maya Durnovo ("Durnovo") (collectively, "Defendants") under 42 U.S.C. § 1983 for alleged deprivations of his First Amendment free association rights.[1]

---

[1] Plaintiff has voluntarily dismissed or abandoned the majority of his original claims, which also included claims for: age and sex discrimination; retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); and state law tort claims

In 1987, Plaintiff began teaching horticulture classes part-time at HCC, and, in 1999, he was hired to work as a full-time instructor. *See* Document No. 20 ex. 3 at 17-18. In January, 2000, Durnovo and Hodges--who are Plaintiff's supervisors--agreed to appoint Plaintiff to Department Chair of the agriculture/horticulture department (the "Department"), a position that required Plaintiff to perform additional duties, such as handling the budget, hiring instructors, and overseeing the Department. *See* id. ex. 3 at 20, 22; ex. 1 ¶ 5; ex. 2 ¶ 5. It is uncontroverted that, under HCC guidelines, department chairs receive a $200.00 monthly stipend and serve a three-year term. *See* id. ex. 1 ¶ 5; ex. 2 ¶ 5. Independent of his Chair duties, Plaintiff also managed a grant program in conjunction with a grant that HCC received from the Unites States Department of Agriculture (the "USDA grant"), for which Plaintiff was compensated an additional $600.00 per month. *See* id. ex. 1 ¶ 18; ex. 2 ¶ 7. The uncontroverted summary judgment evidence is that, in the summer of 2002, Hodges and Durnovo each received complaints from grant participants about the grant program while it was under Plaintiff's supervision, and they were informed

---

against HCC, including constructive discharge, intentional infliction of emotional distress, and slander. *See* Document Nos. 13 & 31 at 1, 3. In his Response to Defendants' Motion for Summary Judgment, Plaintiff for the first time purports to have raised an intentional infliction of emotional distress claim against Individual Defendants Hodges and Durnovo, *see* Document No. 31 at 1, but that claim was pled in the Complaint against only HCC, not the Individual Defendants. The Court considers this newly raised argument at pages 12-15, below.

that the grant was in jeopardy because there was a lack of activity to support the grant funding. *See* id. Subsequently, Hodges and Durnovo--along with Northwest HCC Academic Dean Carlos Garcia ("Garcia")--removed Plaintiff from the grant program. *See* id. Plaintiff alleges that, in June, 2002, Durnovo told Garcia not to talk to Plaintiff. Id. ex. 3 at 42-43.

In December, 2002, two weeks before the end of Plaintiff's three-year term as Department Chair, Hodges informed Plaintiff that he would no longer serve as Department Chair. *See* id. ex. 2 ¶ 10. The next day, Plaintiff filed a grievance form with HCC Chancellor Bruce Leslie ("Leslie"), asserting that Hodges and Durnovo had harassed and retaliated against him when they denied him proper procedure in removing him from his department chair position and from the USDA grant. *See* id. ex. 3 attach. 4; ex. 6 ¶ 7. In a response letter to Plaintiff, Leslie denied the grievance and found, among other things, that: (1) "your three-year term as department chair ended correctly on December 31, 2002," (2) Plaintiff's removal from the USDA grant was an administrative decision, and Plaintiff was informed of the reasons for his removal, which included "a serious lack of grant activities for two full years," and (3) "[f]rom the evidence presented, it cannot be determined that you were harassed or retaliated against." *See* id. ex. 6 ¶ 8 & ex. 6-C. In July, 2003, the human resources department notified Plaintiff that, for the 2003-2004 academic year, his

contract status would change from a 12-month contract to a 9-month contract.  *See* id. ex. 3 attach. 20.  Plaintiff was one of 83 faculty members whose contract status was affected in this manner.  *See* id. ex. 4 ¶ 7.[2]  Plaintiff also alleges that Durnovo wrongfully accused Plaintiff of misappropriating college funds and recruited students to write negative comments about him.  *See* id. ¶¶ 39, 57.[3]  Defendants moved for summary judgment on Plaintiff's case, after which Plaintiff abandoned all of the remaining claims previously alleged (see Note 1, supra, at page 1), leaving in controversy only Plaintiff's remaining § 1983 claim for deprivation of his First Amendment rights.  Defendants argue that they are entitled to summary judgment on this claim because:  (1) the First Amendment claim is time-barred and fails on the merits; (2) Hodges and

---

[2] The uncontroverted summary judgment evidence is that Plaintiff's change in contract status was part of a system-wide, cost-saving policy adopted by the HCC administration and that the new policy affected employees on multiple HCC campuses.  *See* Document No. 20 ex. 4 ¶¶ 7-8; ex. 6 ¶ 10.  The affected employees, including Plaintiff, experienced a proportionate salary reduction; however, they could obtain additional teaching assignments, such as teaching summer classes, if available and offered.  *See* id. ex. 4 ¶ 8.

[3] Plaintiff contends that Durnovo accused him of misappropriating funds when she sent him the following e-mail:

> Seth:  it is my understanding that you have been selling the rodeo plants.  We need all the funds turned in to the cashier immediately.  Your cooperation is appreciated.  Maya.

*See* Document No. 20 ex. 3 attach. 2.  Plaintiff filed a grievance in response to the e-mail, but it was denied.  *See* id. ex. 3 attach. 8; ex. 2 ¶¶ 13-15.

4

Durnovo are entitled to qualified immunity because they did not violate a clearly established constitutional right, and their actions were objectively reasonable; and (3) there is no evidence that HCC, as a governmental entity, was the moving force behind the alleged constitutional violations.

## II. Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. See id. at 2553-54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. See Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)). "[T]he nonmoving party must set forth

specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden.  *See* Anderson, 106 S. Ct. at 2513-14.  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511).  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

### III. Discussion

#### A.  Defendants' Evidentiary Objections

As an initial matter, Defendants object to Plaintiff's summary judgment evidence.  *See* Document No. 34.

1.     Defendants object to ¶ 11 and pages 6 - 8 of Plaintiff's affidavit (Document No. 31-A), on grounds that Plaintiff's statements about Maya Durnovo and Linda Russell are speculative and are not shown to be based on personal knowledge.  These objections, in addition to Defendants' hearsay objection to the alleged statements of Del Foster in ¶ 17, are SUSTAINED.  Defendants' objection to ¶ 15 of Plaintiff's affidavit, in which Plaintiff conclusorily avers that Hodges and the HCC Board had become "angry" over the outcome of a vote--without demonstrating facts to show his personal knowledge or the basis for his perception--is SUSTAINED.

2.     Defendants' objections to portions of David Kercheval's affidavit (Document No. 31-B) are SUSTAINED regarding ¶ 8 (hearsay and lack of personal knowledge); ¶ 9 (conclusory); and the last sentence of ¶ 11 (hearsay); and the objections are otherwise OVERRULED.

3.     Defendants' objections to the affidavit of Stephen Todd Fuller (Document No. 31-C) are SUSTAINED with respect to: (1) the last sentence of ¶ 19, which is conclusory and unsupported by specific facts; and (2) all statements allegedly made by Plaintiff in ¶¶ 24 and 26, which are hearsay and do not fall within an applicable hearsay exception.  Defendants' objection to ¶ 21 of the Fuller affidavit is OVERRULED.  *See* FED. R. EVID. 801(d)(2)(A) & (D).

4. Defendants' objection to ¶ 4 of Charles Wood's affidavit (Document No. 31-D) is OVERRULED.

5. Defendants' objection to the "affidavit" of Sam Dibrell (Document No. 31-E)--which is not sworn on penalty of perjury, and does not state that the averments are true and based on personal knowledge--is SUSTAINED, and Dibrell's statement is not considered on the pending motion.  *See* Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1305-06 (5th Cir. 1988) (disregarding as summary judgment evidence a notarized, self-described "affidavit" that was "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury" so as to bring unsworn statement into compliance with 28 U.S.C. § 1746).

6. Defendants' objection to the three-sentence affidavit of Plaintiff's attorney Larry Watts (Document No. 31-F)--which is "vague and undated and contains no facts demonstrating any personal knowledge regarding the incidents giving rise to this lawsuit," *see* Document No. 34 at 3--is SUSTAINED.

B. Defendants' Motion for Summary Judgment

1. First Amendment Freedom of Association

Title 42 U.S.C. § 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." It is axiomatic that to establish a claim under § 1983, the aggrieved party must first demonstrate the deprivation of a constitutional right or a right secured by law. Baker v. McCollan, 99 S. Ct. 2689, 2692 (1979). In his Complaint, Plaintiff asserts a claim under § 1983 for deprivation of his "First Amendment" and "Free Association" rights. *See* Document No. 1 ¶¶ 11-12. Plaintiff in his Complaint does not specify whether his claim is based on conduct of HCC and/or the Individual Defendants, nor does he state what facts give rise to the claim. The only allegation that potentially implicates the First Amendment is the allegation that, "[i]n June 2001, Durnovo warned Knight's coworkers not to associate with him." *See* Document No. 1 ¶ 18.

At his deposition, Plaintiff testified that the "sole basis" of his First Amendment and free association claims are allegations that his constitutional rights were violated when (1) Durnovo in June, 2002 allegedly told Garcia, the academic dean, not to talk to Plaintiff; and (2) Durnovo told Plaintiff not to be involved with the Spring Branch ISD Ag. Program after he was removed from the Department Chair position. *See* Document No. 20 ex. 3 at 41-44.[4]

---

[4] In his Response to Defendants' Motion for Summary Judgment (Document No. 31), Plaintiff for the first time purports to sue for a violation of his right "to speak on matters of public concern." *See* id. at 2-3. The phrases "public concern" and "free speech" do not appear in his Complaint, and Plaintiff alleges no facts to

Defendants argue, *inter alia*, that no constitutional violations have occurred.

The First Amendment does not contain a "generalized right of 'social association.'"  Wallace v. Tex. Tech. Univ., 80 F.3d 1042, 1051 (5th Cir. 1996) (quoting City of Dallas v. Stanglin, 109 S. Ct. 1591, 1595 (1989)).  The United States Supreme Court has determined that the First Amendment encompasses two categories of association: (1) the choice to enter into and maintain certain intimate human relationships, and (2) the right to associate for the purpose of engaging in expressive activities protected by the First Amendment--namely, speech, assembly, petition for the redress of grievances, and the exercise of religion.  *See* Wallace, 80 F.3d

---

support such a claim, nor did he testify to such a claim during his deposition.  Defendants correctly argue that Plaintiff may not raise a new claim in a response to a motion for summary judgment, *see* Wood Arts Golf, Inc. v. Callaway Golf Co., 196 F. Supp. 2d 467, 469 n.1 (S.D. Tex. 2002).

Furthermore, Defendants assert that Plaintiff in his Response impermissibly attempts to alter the basis of his free association claim by asserting for the first time that it is based on two alleged associations: (1) his assistance of David Kercheval's defense against allegations of wrongdoing prior to Kercheval's settlement with HCC in February, 2001; and (2) his relationship with the Houston Livestock Show & Rodeo.  *See* Document No. 31 at 3.  Neither of these allegations is contained in Plaintiff's Complaint, and the new theories directly contradict Plaintiff's sworn deposition testimony describing the "sole basis" for his First Amendment free association claim.  *See* Document No. 20 ex. 3 at 42.  Plaintiff may not materially alter and change the entire basis for his First Amendment claim after the pleadings are joined and closed, Plaintiff's full deposition testimony on the facts has been completed, and Defendant's motion for summary judgment has been filed.

at 1051.  *See also* Ibarra v. Houston Indep. Sch. Dist., 84 F. Supp. 2d 825, 837 (S.D. Tex. 1999) (Werlein, J.) (same).  "Relationships with colleagues ordinarily are not afforded protection as intimate associations."  *See* Hernandez v. Duncanville Sch. Dist., No. 3:04 CV 2028 BH(B), 2005 WL 3293995, at *10 (N.D. Tex. Dec. 5, 2005) (citing Swanson v. City of Bruce, Miss., 105 Fed. Appx. 540, 542 (5th Cir. 2004)).

Defendants argue that the first basis of Plaintiff's free association claim--that Durnovo in June, 2002 allegedly told Garcia not to talk to Plaintiff--is barred by the statute of limitations. Claims pursuant to § 1983 are subject to a two-year limitations period in Texas.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp. 2006); Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 518 (5th Cir. 1998).  Plaintiff filed suit on January 31, 2005.  Thus, a claim based on acts occurring before January 31, 2003--including Durnovo's alleged instruction to Garcia in June, 2002--is barred.[5]  Regardless, the claim would fail because Plaintiff has not shown that his relationship with either Garcia or with the Spring Branch ISD Ag. Program was a protected one that (1) arose for the purpose of engaging in expressive activities, or

---

[5] Moreover, Plaintiff has presented no evidence that Durnovo actually gave this instruction to Garcia. Durnovo denies telling Garcia or anyone else not to associate with Plaintiff, *see* Document No. 20 ex. 1 ¶ 41, and Plaintiff has presented no admissible evidence to the contrary or any basis for his own hearsay accusation to that effect.

11

(2) included such "deep attachments and commitments . . . of thoughts, experiences, and beliefs" or personal aspects of one's life sufficient to constitute an intimate relationship. *See* Roberts v. U.S. Jaycees, 104 S. Ct. 3244, 3250 (1984). *See, e.g.,* Swanson, 105 Fed. Appx. at 542 (affirming summary judgment for city on free association claim and finding no protected relationship between police chief and assistant chief of police, where their relationship was essentially social and professional in nature and did not arise for purpose of engaging in protected speech); Wallace, 80 F.3d at 1052 (affirming grant of summary judgment for university and supervisor on coach's freedom of association claim where coach did not establish the existence of an intimate relationship between a coach and his players). Plaintiff has presented no evidence and no argument that the alleged restraint of his social or professional interactions with Garcia and/or the Spring Branch ISD Ag. Program implicates constitutionally protected rights of intimate or expressive association. For each and all of these reasons, Defendants are entitled to summary judgment on this claim.

    2.   <u>Intentional Infliction of Emotional Distress</u>

Plaintiff alleges in his Complaint an intentional infliction of emotional distress against *HCC*. *See* Document No. 1 ¶¶ 62-63. But in his Response to Defendants' Motion for Summary Judgment,

Plaintiff asserts that his only remaining state tort claim is one for intentional infliction of emotional distress against the *Individual Defendants*. *See* Document No. 31 at 1. However, Plaintiff did not plead this claim against the Individual Defendants, and, even if he had, the claim would fail on its merits.

To establish a claim for intentional infliction of emotional distress in Texas, a plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998). Conduct is extreme and outrageous only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." GTE Sw., Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999) (internal citations omitted). Ordinary employment disputes are not sufficient to state a claim for intentional infliction of emotional distress. *See* id. at 612. Only in the most unusual of circumstances does an employer's conduct move "outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." Id. at 613. A two-year statute of limitations applies to claims for intentional infliction of

13

emotional distress in Texas.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003; Gray v. Sears, Roebuck & Co., Inc., 131 F. Supp. 2d 895, 901 (S.D. Tex. 2001).

First, as Defendants point out, many of the actions of which Plaintiff complains--including his removal from the USDA grant and his removal as Department Chair--occurred more than two years before Plaintiff filed suit on January 31, 2005, and, as such, are too remote to form the basis for a tort claim.  The remaining allegations against the Individual Defendants--including the making of decisions about Plaintiff's contract status and his assignments, processing his grievances, questioning Plaintiff about the Rodeo plant sales, and asking students to evaluate Plaintiff--are, at most, ordinary employment disputes over program management and do not, as a matter of law, constitute the sort of extreme behavior needed to support a claim for intentional infliction of emotional distress.  *See, e.g.,* Brewerton v. Dalrymple, 997 S.W.2d 212, 215-16 (Tex. 1999) (conduct not extreme and outrageous where university administrators made negative comments in professor's tenure file, denied professor tenure, restricted his speech regarding the tenure file, and assigned him an excessive course load); Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995) (questioning an employee about a suspected theft does not support a claim for intentional infliction of emotional distress); Harris-Childs v. Medco Health Solutions, Inc., No. 4:03-CV-77-Y,

2005 WL 562720, at *9 (N.D. Tex. Mar. 10, 2005) (defendants' conduct not extreme and outrageous where plaintiff alleged, among other things, unjustified disciplinary actions; retaliation for complaining of harassment; unilateral changes in her job title, department, and seniority date; and disparate treatment with respect to hours, performance reviews, and policy application), *aff'd*, 2006 WL 616022 (5th Cir. 2006). As such, even if Plaintiff had alleged against the Individual Defendants a claim for intentional infliction of emotional distress, summary judgment would be warranted because there is no evidence that the Individual Defendants ventured into the realm of extreme and outrageous conduct.

## IV.  Order

Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment (Document No. 20) is GRANTED, and the claims against Defendants Houston Community College, Zachary Hodges, and Maya Durnovo are DISMISSED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 3rd day of November, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE